UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DANIEL GONZALES LLAGA** | : | **DOCKET NO. 17-cv-472** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **SEALIFT HOLDINGS, INC., ET AL** | : | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Before the court is a Motion to Transfer Venue [doc. 6] filed by plaintiff Daniel Gonzales Llagas pursuant to 28 U.S.C § 1404. The defendants oppose the motion. Doc. 20. For the reasons stated below, the motion is hereby **DENIED.**

**I.**
**BACKGROUND**

The plaintiff, a citizen of the Phillipines, filed suit individually and as a putative class representative in the Fourteenth Judicial District, Calcasieu Parish, Louisiana, on March 17, 2017. Doc. 1, att. 1, pp. 2–10. As defendants he named Sealift Holdings, Inc.; Sealift, Inc.; Black Eagle Shipping, LLC; Sagamore Shipping, LLC; Fortune Maritime, LLC; Sealift Tankships, LLC; and Remington Shipping, LLC (collectively, "defendants"). *Id.* at 2–3. He alleges that the defendants operate as a single business enterprise and that they own various ships which he identifies as the "Sealift Fleet." *Id.* at 3. Plaintiff stated that he was employed as a seaman aboard the Sealift Fleet from 2015 to 2017, and brings claims for unpaid wages on behalf of himself and a putative class against the defendants under the U.S. law and general maritime law. *Id.* at 3–5.

After the suit was filed, the state court issued a Writ of Foreign Attachment on the plaintiff's behalf on one vessel from the Sealift Fleet, the M/V Black Eagle ("the vessel"). *Id.* at 8, 20–23. Defense counsel Daniel Tadros, who has enrolled on behalf of all defendants in this matter, then called plaintiff's counsel, Michael Colomb, to negotiate the vessel's release and they discussed the possibility of transfer to the Middle District or Eastern District of Louisiana in the event that the case was removed to federal court. Doc. 20, att. 1, pp. 1–2. Following the telephone call, Colomb sent Tadros an email on March 19, 2017, listing proposed terms for the vessel's release and related discovery. *Id.* at 2, 4–5. These were:

> A) Terms of release:
>
>   1) Issuance of an acceptable terms LOU by the American Club in favor of plaintiff in the amount of 7.5 million USD
>   2) Waiver of and acceptance of formal citation and service of process of the writ of attachment, the petition and the discovery order, reserving all rights and defenses of all defendants
>   3) Agreement by the corporate defendants to depose the relevant corporate defendants through designated representatives in New York within 30 days
>   4) Produce for deposition in the state of Louisiana within a reasonable time not to exceed 120 days the Master, Chief Officer and Chief Engineer of the M/V Black Eagle who were serving on board the vessel on March 19, 2017
>   5) If the case is removed to federal court, to agree to transfer to the Middle District of Louisiana
>
> B) Discovery Agreement
>
>   1) To produce from the vessel the items listed on the attached document prior to the vessel departing the jurisdiction of the 14th Judicial District Court.

*Id.* at 4–5. Colomb closed by asking Tadros to contact him after he had "had the opportunity to discuss this matter with [Tadros's] clients." *Id.* at 5. Tadros replied the same day:

> Thanks for yours below. I am seeking instructions.

> I can confirm that I have authority to issue a Club LOU for the $7.5 million subject to us agreeing on its language. As discussed, the soonest I can issue the LOU is tomorrow, Monday.
>
> As far as the rest of the conditions, like I said, I am seeking authority. For what it is worth, 30 days in your item 3) may not be enough. Can you live with 60 days?
>
> I have already requested the Master to copy as many of the documents as he can, but I cannot guarantee that we will get everything that you listed in the attachment before the vessel sails tonight. I need leeway to get the rest of the documents to you within 15-30 days. Are you ok with that?
>
> I will get back to you as soon as I have answers and authority for the rest.

*Id.* at 4. Tadros and Colomb had another telephone conversation that evening, during which Tadros declares that he "again stressed that [he] had not received authority regarding the proposed transfer of the case to the Middle District of Louisiana." *Id.* at 2. Colomb maintains that, through this conversation, they "negotiated various terms of the proposed release agreement, including those for discovery of the crew members, discovery depositions of the corporate defendants, as well as production of documents from the vessel prior to the vessel leaving the jurisdiction of the 14th Judicial District Court." Doc. 6, att. 2, p. 2. He also declares that they had discussed the matter of the transfer (though it is not clear if this discussion was part of the same telephone call) and agreed "that it would be more convenient to all of the parties if this matter were to be litigated in the Middle District of Louisiana."[1] Doc. 21, att. 1, p. 2. However, he does not contest Tadros's representation regarding his (Tadros's) statements during the call. *See id.*

After the phone conversation, Colomb sent Tadros another email, stating:

> **As per our telephone conversation this evening** we have requested the sheriff of Calcasieu [P]arish to release from attachment the M/V Black Eagle forthwith.

---

[1] The defendants argued that, due to the state court's order granting immediate discovery and the necessity that security be furnished before the vessel could be released, "[u]nlike issues regarding security and discovery . . . [the defendants] had no reason to agree to Plaintiff's preferred venue." Doc. 20, p. 4. The mention of counsel agreeing that transfer would be mutually beneficial appears to be a refutation of this point.

> Our agreement for this release is as set forth in my earlier email with the stipulation that the corporate depos in New York take place as soon as practicable but in any event within 45 days rather than 30. In addition you agree to provide the discovery responses from the vessel as soon as they are received by your office. Appropriate terms of the LOU, the standard language, we can work out by close of business tomorrow.

Doc. 20, att. 1, p. 6 (emphasis added). Colomb declares that he received no objection from Tadros or anyone else on behalf of the defendants. Doc. 6, att. 2, p. 2.

On March 29, 2017, the defendants removed the action to this court on the basis of diversity jurisdiction, federal question jurisdiction, and the Convention on the Enforcement of Foreign Arbitration Awards. Doc. 1. The plaintiff then filed a motion to transfer, arguing that a forum selection clause exists pursuant to the parties' stipulated terms of release, *supra*, and should be enforced by this court. Doc. 6. The defendants oppose transfer, maintaining that they did not ultimately agree to that term. Doc. 20.

## II.
## LAW & ANALYSIS

As a threshold matter we must determine whether a binding agreement existed between the parties based on the terms exchanged in the emails above. The plaintiff refers to the term as a "stipulation" which is defined as "[a] promise or agreement with reference to a pending judicial proceeding, made by a party to the proceeding or his attorney," which is "binding without consideration."[2] Restatement (Second) of Contracts § 94.[3] However, a stipulation is generally only binding under the following circumstances:

---

[2] The plaintiff relies on a Second Circuit case for the proposition that "a 'stipulation' is treated as a contract between the parties and is subject to the general principles of contract construction interpretation." Doc. 6, att. 1, p. 3 (citing *United States v. Assets of Revere Armoured, Inc.*, 131 F.3d 132 (2d Cir. 1997)). The defendants distinguish this case and argue for its lack of binding or persuasive value within this circuit. Doc. 20, p. 6. Our findings rest instead upon the Restatement provision cited above, and so no exploration of *Revere Armoured*'s applicability is required.

[3] As the Restatement notes, "[s]tatutes or rules of court in most jurisdictions require most stipulations to be in writing. In some States other formalities, such as filing in court, are also required." *Id.* at cmt. b. However, as the same comment also observes, "[w]here a stipulation has been acted on, the court will not let a party take unfair advantage of the action

> (a) if it is in writing and signed by the party or attorney, or
> (b) if it is made or admitted in the presence of the court, or
> (c) to the extent that justice requires enforcement in view of material change of position in reliance on the promise or agreement.

*Id.*

Here venue was made one of the proposed terms of release from the beginning of the exchange; however, this does not change the fact that Tadros mentioned multiple times that he had not received authority from his clients for that provision. Moreover, although the last communication on the terms stated that "[o]ur agreement for this release is as set forth in [Colomb's] earlier email," it also stated that plaintiff's counsel had requested release of the vessel "[a]s per our telephone conversation this evening," at which time Tadros had made it clear that he did not yet have consent from his clients to agree to the venue term. Doc. 20, att. 1, p. 6.

We reject the plaintiff's assertion that these exchanges could have yielded an agreement on venue. As there is no agreement on that term, it cannot give rise to a binding forum selection clause between the parties in this matter. The parties have made no other arguments in support of transfer under 28 U.S.C. § 1404, and so the motion must be denied.

### III.
#### CONCLUSION

For the reasons stated above, the plaintiff's Motion to Transfer Venue [doc. 6] to the Middle District of Louisiana is hereby **DENIED.**

---

he has induced." *Id.* Thus, given that release of the ship was obtained upon the stipulation, we need not explore its compliance with any rule of court. The question instead is the issue raised *supra* under subsection (c).

THUS DONE AND SIGNED in Chambers this 11th day of July, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE