# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| **DANIEL GONZALES LLAGAS** | **CASE NO. 2:17-CV-00472** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SEALIFT HOLDINGS INC ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING AND ORDER

Before the Court is a "Motion to Reduce Security" (Doc. 102) wherein Sealift Holdings, Inc., Sealift, Inc., Black Eagle Shipping, LLC, Fortune Maritime, LLC, Sealift Tankships, LLC, Sagamore Shipping, LLC and Remington Shipping, LLC (collectively referred to as "Sealift") request that the Court reduce the security posted for the claims of Plaintiff Daniel Gonzales Llagas.

## PROCEDURAL HISTORY

Plaintiff filed the instant lawsuit on March 17, 2017, asserting claims arising out of his employment on Sealift vessels; Plaintiff alleges that his wages were paid contrary to U.S. law. Plaintiff prayed for relief including (1) certification as a class action "on behalf of all foreign nationals who worked as a seafarer aboard the vessels of the Sealift Fleet between January 1, 2015 and March 17, 2017; (2) payment of wages calculated at the "highest rate of pay from [the proposed class's] port of embarkation;" and (3) issuance of a writ of attachment of Sealift's vessel, the M/V Black Eagle (the "Vessel").[1] To avoid seizure, Sealift provided Plaintiff with alternate security in the form of a Letter of

---
[1] Doc. 1-1, Petition for Damages, ¶ 7.

Undertaking ("LOU") in the amount of $7.5 million issued by the American Steamship Owners Protection & Indemnity Association.[2]

After removal from state court, and pursuant to a Motion to Stay Litigation and Arbitration filed by Sealift,[3] followed by various other motions, the last of which was a Motion to Appoint Arbitrator and, Additionally or in the Alternative, Motion to Enjoin Select Foreign Proceedings"[4] this Court concluded that Plaintiff's employment contract ("POEA") which contained an arbitration clause was enforceable and that the arbitral proceeding belongs before the arbitral bodies in the Philippines.[5] We also found that Section 5 of the POEA grants this Court the authority to designate and appoint an arbitrator. The Court expressly noted that counsel for Plaintiff Llagas had failed to comply with this Court's rulings and orders to arbitrate Plaintiff's claims pursuant to the arbitration provision in the POEA. Due to the protracted motion practice, and counsel for Plaintiff Llagas' blatant non-compliance with this Court's orders, we ordered Llagas to proceed with arbitration in the Philippines with the National Conciliation Mediation Board of the Department of Labor and Employment within 30 days of the ruling.[6]

Also before the Court was a Motion to Certify Class which was denied due to a lack of standing because Llagas's claims are subject to arbitration under Fifth Circuit law. Sealift now asks the Court to reduce its $7.5 million bond to a maximum of $41,570. Sealift

---

[2] Defendants' exhibit 1.
[3] Doc. 9.
[4] Doc. 95.
[5] Doc. 101.
[6] Id.

argues that this amount is more than sufficient to secure any conceivable arbitration award in Llagas's favor.

Llagas opposes the reduction in security. Llagas asserts that the case is stayed pending arbitration and remains a putative class action.[7] He attempts to persuade the Court not to evaluate the merits and value of the litigation. Llagas acknowledges that it is up to the Philippine arbitrator to determine the merits of his individual claim and then argues that the putative class is at least the same today as it was when Sealift agreed to the $7.5 million LOU.

Louisiana Code of Civil Procedure provides that "[i]f the value of the property seized under a writ attachment or of sequestration exceeds what is reasonably necessary to satisfy the plaintiff's claim, the defendant by contradictory motion may obtain the release of the excess." Louisiana Code Civ. P. art. 3503. Likewise, Supplemental Rule E(6) provides that:

> Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given; and if the surety shall be or become insufficient, new or additional sureties may be required on motion and hearing.

Federal Rule of Civil Procedure Supplemental Rule E(6). This Court's task is to quantify the value of the Plaintiff's claim as "fairly stated." The "fairly stated" provisions of Rule E(5) indicates that the Court is not bound by any monetary amount set forth in the complaint, but can "look behind the complaint to ascertain the amount actually in

---

[7] Llagas asserts that he will seek class certification in this Court after arbitration if the Philippine arbitrator does not determine class status beforehand. Doc. 104, p. 4.

controversy . . . . Where the claim is unliquidated and the parties cannot agree as to the amount of the bond, it will be incumbent upon the court to make some effort to place a reasonable value on the claim." *Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transport, N.V.,* 572 F.3d 96, 108 (2nd Cir. 2009). The *Fairmount* court recognized that a district court's discretion to reduce security is crucial to prevent the pre-judgment attachment from becoming an unfair and abusive weapon wielded by plaintiffs. Hence, Sealift maintains that a significant reduction in security is appropriate.

Sealift notes that Llagas's original petition was filed as a putative class action seeking unspecified damages on behalf of a class of foreign seafarers who worked onboard Sealift vessels. Sealift argues that this Court's denial of the Motion to Certify Class fundamentally altered the landscape and eliminated the grounds for securing class claims. Therefore, security should be limited to a sum sufficient to secure Llagas' potential arbitration award.

Llagas appears to argue that the issue of class certification is delayed, but not dead, therefore, the value of the claim remains the same. In other words, Llagas contends that Sealift should be required to secure the claims of theoretical class members. This Court, in adopting the Magistrate Judge's Report and Recommendation concluded that Llagas is bound to arbitrate his individual claims and thus lack standing to bring a collective action. Our ruling is supported by ample authority that a plaintiff who agrees to arbitrate his claims waives any right to bring a collective action with regard to those claims. Accordingly, Llagas lacks standing which deprives the district court of subject matter jurisdiction over those claims. *White v. Turner,* 2016 WL 1090107, at *5-6 (S.D. Tex. 2016); *Dixon v. NBC*

*Universal Media, LLC,* 947 F.Supp.2d 390, 406 (S.D.N.Y. 2013) ("[plaintiff] has agreed to arbitrate her FLSA claims, and has waived the right to bring a collective action with regards to those claims"); *Beery v. Quest Diagnostics, Inc.,* 2013 WL 3441792 (D.N.J. 2013) (dismissing class action claims after finding that named plaintiff's agreement to arbitrate deprived court of subject matter jurisdiction). See also *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 74-79 (holding mootness of named plaintiff's putative class certification deprived court of subject matter jurisdiction).

Llagas also argues that this Court does not have the authority to reduce security. Sealift cites cases in which the courts routinely reduce the amount of security held during a stay pending resolution of the merits of a claim in foreign arbitration. *Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.,* 2005 WL 2446236 (S.D.N.Y. 2005) (granting motion to reduce security and cross-motion for countersecurity while claim was pending in London arbitration); *Pilot Enterprises, Inc. v. Brodosplit Inc.,* 2009 WL 995452 (S.D.N.Y. 2009) (granting motion to reduce security for claim pending in London arbitration).

Sealift also notes that because Rule E(7) permits the court to retain the power to rule on a Motion to Set Countersecurity (which necessarily requires the court to determine the amount of such countersecurity), then it would be illogical to not permit the court to retain the power to reduce security. Sealift further remarks that Llagas has cited no Fifth Circuit authority to support his contention that this Court is without the authority to reduce the security pending the foreign arbitration proceeding. The Court agrees with Sealift that this

Court has the authority to reduce security pending the foreign arbitration, if such is warranted.

As noted by Sealift, this Court does not need to evaluate the merits of Llagas's claims in order to determine if the security should be reduced and by what amount. The Court need only determine the fairly stated value of the claims by looking behind the complaint and making an effort to place a reasonable value on the claims to ensure that maritime plaintiffs do not abuse the attachment procedure by claiming damages that have no basis in reality. *Fairmount Heavy Transport, N.V.,* 572 F.3d at 108.

Sealift has submitted evidence for this Court to determine the fairly state values of Llagas's claims. In his Petition for Damages, Llagas alleges that his employment was contrary to U.S. law and that he is entitled to compensation pursuant to 46 U.S.C. § 11107.[8] 46 U.S.C. § 11107 provides as follows:

> An engagement of a seaman contrary to the laws of the United States is void. A seaman so engaged may leave the service of the vessel at any time and is entitled to recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of the engagement, whichever is higher.

Llagas stipulated in the records that he had been paid in full all wages due under his Contract of Employment.[9] Therefore, Llagas's potential claim would be calculated based on the highest rate of wages available in the port of engagement offset by wages already

---

[8] Defendant's exhibit 2, ¶ 4, Petition for Damages.
[9] Doc. 69.

paid. The port of engagement is a plaintiff's port of hire. *Dziennik v. Sealift, Inc.*, 2018 U.S. Dist. LEXIS 59211, *4 (E.D.N.Y. 2018). Llagas's port of hire was in Manila.[10]

"Highest rate of wages" has been held to be the higher of either the wages a seaman orally agreed to, or the highest rate of wages that could be earned by a seaman at the port of hire who has the same rating as the complainant. *TWC Special Credits v. Chloe Z. Fishing Co. Inc.*, 129 F.3d 1330, 133 (9th Cir. 1997) ("Cases construing the predecessor statutes of 46 U.S.C. § 11107 consistently held that a seaman's 'highest rate of wages' was to be measured against seamen with the same rating or similar duties.'" (citations omitted)).

Llagas was employed as a "fitter," on various vessels owned by Sealift during 2015-2017; during that three year period, Llagas worked 24 months and earned a total pay of $41,570 which equates to approximately $1,732 per month.[11] Sealift informs the Court that the $7.5 million security equates to $312,500 per month[12] which is roughly 180 times Llagas's gross earnings over three years. Llagas claims as damages the difference between the highest rate of wages available to fitters in Manila during the relevant time period, and the wages actually paid to Llagas.

Noting that it is Llagas's burden to prove the quantum of his claim as well as to demonstrate the "fairly stated" value of that claim for security purposes, Sealift suggests that security equal to Llagas's gross wages over three years ($41,570) is more than adequate for his claim. Thus, Sealift requests that its security be reduced from $7.5 million to $41,570.

---

[10] Defendants' exhibit 4. Employment Contract.
[11] Defendants' exhibit 3, Payroll Records from Lots Shipping & Trading Pte. Ltd, Llagas's employer.
[12] $7,500,000/24= $312.500.

The Court agrees with Sealift that we have the authority to reduce its security and furthermore, that the security originally agreed upon is now excessive. The Court notes that Llagas has not provided any quantum value of his claims for us to consider, nor does he dispute the reduced amount of security offered by Sealift. We further find that security in the amount of $41,570 as presented by Sealift is a reasonable amount as to Llagas's claims.

## **CONCLUSION**

For the reasons set forth above,

**IT IS ORDERED** that the Motion to Reduce Security (Doc. 102) is hereby **GRANTED** and the $7.5 million security is hereby **REDUCED** and **SET** at $41,570.

**THUS DONE AND SIGNED** in Chambers, on this 31st day of July, 2020.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**