UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DANIEL GONZALES LLAGAS | * CIVIL ACTION |
| VERSUS | * NO.: 2:17−CV−00472−PM−KK |
| | * |
| | * JUDGE CAIN |
| SEALIFT HOLDINGS, INC.; SEALIFT, INC.; BLACK EAGLE SHIPPING, LLC; FORTUNE MARITIME, LLC; SEALIFT TANKSHIPS, LLC; SAGAMORE SHIPPING, LLC; and REMINGTON SHIPPING LLC | * |
| | * MAGISTRATE JUDGE KAY |
| | * |

**MEMORANDUM IN SUPPORT OF MOTION TO RECOGNIZE AND ENFORCE ARBITRATION DECISION AND RELEASE SECURITY**

Sealift Holdings, Inc., Sealift, Inc., Black Eagle Shipping, LLC, Fortune Maritime, LLC, Sealift Tankships, LLC, Sagamore Shipping, LLC, and Remington Shipping, LLC (collectively, "Sealift") respectfully move this Honorable Court for an Order recognizing and enforcing the decision of the Honorable John-John S. Saliba, Labor Arbiter ("Arbiter Saliba") rendered in the Republic of the Philippines on January 4, 2022 in the matter styled *Daniel G. Llagas v. Magsaysay Maritime Corp., Sealift Holdings, Inc., and Marlon R. Roño*, NLRC NCR OFW Case No. (M) 05-0192-21, in which Arbiter Molino "**DISMISSED** for lack of basis and merit" all claims asserted by Plaintiff Daniel Gonzales Llagas ("Plaintiff").[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Plaintiff's Claim**

Plaintiff, Mr. Llagas, is a citizen and resident of the Philippines.[2] On March 17, 2017, Plaintiff filed a Petition (the "Petition") against Sealift in the 14th Judicial District Court for the

---

[1] *See* Decision of Arbiter Saliba (the "Decision"), attached as Exhibit 1.
[2] *See* State Court Petition, Rec. Doc. 1-1, ¶ 1.

Parish of Calcasieu commencing *Daniel Gonzales Llagas v. Sealift Holdings, Inc.*, Civil Action No. 2017-1086.[3] In the Petition, Plaintiff alleged that in 2015-2017 Plaintiff was employed as a fitter onboard the M/V BLACK EAGLE, the M/V ADVANTAGE, the M/V CAPT STEVEN L BENNETT, and the M/V CAPT DAVID L. LYON (the "Sealift Vessels"). Plaintiff asserted that he was entitled to damages arising out of his employment onboard the Sealift Vessels including damages for "breach of contract; full overtime wages pursuant to contracts and agreements, common law, statutory law and general maritime law; highest rate of pay from their port of embarkation; and delay and penalty wages."[4]

Plaintiff's claims were originally secured by a Letter of Undertaking in the amount of $7.5 million, which was reduced to $41,570 by Order of this Court dated July 31, 2020.[5] The reduced security is still held in favor of Plaintiff.

## B. The Court's Orders Compelling Arbitration

On March 29, 2017, Sealift removed Plaintiff's State Court Petition to this Honorable Court pursuant to 28 U.S.C. § 1441, citing as bases for removal diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331. As to the latter, Sealift relied upon the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*, which codified the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards.[6] No timely motion to remand was filed.

On May 2, 2017, Sealift moved for an order staying Plaintiff's suit and compelling arbitration in the Philippines before the National Labor Relations Commission (NLRC) or National Conciliation and Mediation Board (NCMB) pursuant to a valid and enforceable clause in

---

[3] *See* State Court Petition, Rec. Doc. 1-1.
[4] *See* Rec. Doc. 1-1, ¶ IV (Prayer for Relief).
[5] *See* Rec. Doc. 106, pp. 1-2.
[6] *See* Rec. Doc. 1, ¶

Plaintiff's Philippine Overseas Employment Administration ("POEA") employment contract.[7] Plaintiff opposed that motion.[8]

On July 27, 2018, Magistrate Judge Kay issued a Report and Recommendation recommending that Sealift's Motion to Stay and Compel Arbitration be granted.[9] Plaintiff objected, and the Court remanded the issue to Magistrate Kay for further consideration.[10]

On February 5, 2019, Magistrate Kay issued a Supplemental Report and Recommendation again recommending that Sealift's Motion to Stay and Compel Arbitration be granted.[11] On March 20, 2019, the Court adopted the Supplemental Report and Recommendation as its Judgment, granting Sealift's Motion to Stay and to Compel Arbitration.[12] The Court issued an Amended Judgment on June 12, 2019 clarifying its reasons for granting the motion, but reiterating its decision that Plaintiff was compelled to arbitrate his claims against Sealift in the Philippines.[13] Plaintiff's further attempts to reverse the Court's decision compelling arbitration were all denied.[14]

### C. Arbitration in the Philippines

Plaintiff filed a Complaint before the NLRC on or about May 28, 2021, which was allotted to Arbiter Saliba.[15] Plaintiff was represented in the arbitration by Joseph Capuyan and the law firm Capuyan & Quimpo Law Office of San Antonio Village, Makati City, Philippines. The Complaint named as Respondents only Magsaysay Maritime Corporation ("Magsaysay"), Sealift Holdings Inc. ("Sealift Holdings"), and Marlon Roño. The Causes of Action as alleged in the Complaint

---

[7] *See* Rec. Doc. 9.
[8] *See* Rec. Doc. 39.
[9] *See* Rec. Doc. 55.
[10] *See* Rec. Docs. 58, 70.
[11] *See* Rec. Doc. 72.
[12] *See* Rec. Doc. 84.
[13] *See* Rec. Doc. 92.
[14] *See* Rec. Doc. 85 (Plaintiff's Motion for Reconsideration); Rec. Doc. 89 (Appeal Remark regarding Writ of Mandamus)
[15] *See* NLRC Complaint and Summons, attached as Exhibit 2.

stated: "Money Claims – Salary/Wage – Underpayment, Overtime Pay – Underpayment."[16] No mention of any foreign (*i.e.*, non-Philippines) law was made in the Complaint, which instead stated that from October 6, 2016 through January 3, 2017 Plaintiff had been due $600.00/month salary under his contract and was paid $0.00/month.[17]

Pursuant to orders issued by Arbiter Saliba, between October 22, 2021 and December 20, 2021, Sealift and Plaintiff each submitted a Position Paper, a Reply Paper, and a Sur-Reply. No conferences were conducted pursuant to NLRC *En Banc* Resolution No. 03-20, Series of 2020, which terminated mandatory conferences due to the COVID-19 pandemic.[18]

On December 29, 2021, Arbiter Saliba rendered an eleven (11) page Decision ultimately dismissing Plaintiff's claims against Sealift "for lack of basis and merit."[19] In the Decision, Arbiter Saliba briefly summarized the underlying facts of Plaintiff's employment by Magsaysay as agent of LOTS International Limited ("LOTS International") to work on "US-flagged vessels" including the M/V BLACK EAGLE.[20] The Arbiter then summarized Plaintiff's claims, and the ultimate question, as follows:

> In his Complaint, complainant sought to collect sums of money for underpayment of salary/wages and overtime pay. However, in Complainant's Position Paper, he added several other causes of actions invoking several US Laws and likewise joined several other parties as party-respondents.
>
> The issue is: Whether or not Complainant is entitled to his money claims?
>
> However, as we go along the arguments of Complainant on one hand, and the defenses and rebuttal arguments of respondents on the other hand, there lies another issue: Whether complainant's employment contract with respondents is governed by US Law or Philippine law.[21]

---

[16] *Id.*
[17] *Id.*
[18] *See* Decision, attached as Exhibit 1, p. 1.
[19] *Id.*
[20] *Id.*
[21] *Id.*, p. 2.

Arbiter Saliba then approached resolution of these questions in two separate tracks: procedural and substantive.[22] As to procedural issues, Arbiter Saliba first found that Plaintiff violated the due process rights of Sealift Incorporated, Sealift Inc. of Delaware, Sealift LLC, Black Eagle Shipping LLC, Fortune Maritime LLC, Sagamore Shipping LLC, and Sealift Chemicals, LLC by implicating them in his Position Paper after failing to name them in his Complaint. This pleading defect was not found as to Sealift Holdings Inc., owner of the BLACK EAGLE.[23]

Next, Arbiter Saliba found that Plaintiff's attempt to establish a class was procedurally deficient, as Plaintiff's complaint failed to allege necessary facts to establish the existence of a class, failed to establish that Plaintiff was an adequate representative of any class, and "even failed to state the very simple fact of the number of Filipino seafarers, working on board US-flagged vessels, who would be affected."[24]

Finally, and most notably, the Arbiter found that Plaintiff's Complaint failed to assert any Causes of Action under U.S. law, despite Plaintiff then discussing several in his Position Paper:

> ***Monetary claims under US Law not included as cause of action in the Complaint, failure to prove US Law in accordance with the Rules on Evidence***
>
> As pointed out by respondents, complainant included in his Position Paper other causes of action, not specified in the Complaint. The NLRC Rules of Procedure provides that the parties' position papers, especially that of the claimant, should only cover claims and causes of action raised in the complaint.
>
> A perusal of the Complaint will show that complainant is only claiming underpayment of salary/wages and overtime pay covering the employment period from October 6, 2016 until January 3, 2017.[25]

---

[22] *Id.*
[23] *Id.*, p. 3.
[24] *Id.*
[25] *Id.*, p. 4 (emphasis in original).

Turning to the substantive elements of Plaintiff's claim, the Arbiter found that "[e]ven if the present Complaint is allowed and given due course, despite its procedural infirmities," Plaintiff's claims must still be denied.[26] On the issue of the underpayment of $600.00/month alleged in Plaintiff's Complaint, the Arbiter found that "Complainant did not submit any evidence or much less a computation to substantiate how much he was paid, let alone 'unpaid' by respondents."[27] In fact, Arbiter Saliba found that Sealift and the respondents had "satisfactorily proven compliance with the above cited terms and conditions [*i.e.,* payment terms] written in the contract of employment, particularly payment of wages and all other remuneration."[28]

Arbiter Saliba then spent four (4) pages of his Decision addressing choice of law issues and Plaintiff's arguments under U.S. law. The Arbiter first pointed out that Plaintiff's "contract was not only executed in the Philippines, it was also performed here, at least partially…."[29] The Arbiter continued:

> While respondent Sealift Holdings Inc., Owner of the vessel is a foreign corporation, it is represented by a Philippine manning agent, respondent Magsaysay Maritime Corporation who in turn has a POEA-registered principal LOTS International Limited. For all intents and purposes, complaining was recruited and hired in Manila, Philippines. Lastly, while complainant had successive contracts with respondents, he is based on the Philippines while he is on leave.[30]

The Arbiter concluded based on these facts: "Guided by the principle of *lex loci contractus*, all the above contacts point to the Philippines as a proper forum for the resolution of any and all contractual disputes between complainant respondents."[31]

Arbiter Saliba directly addressed Plaintiff's claim that he was entitled to relief under 46

---

[26] *Id.*, p. 5.
[27] *Id.*
[28] *Id.*
[29] *Id.*, p. 7.
[30] *Id.*
[31] *Id.*

6

U.S.C. § 8106, 46 U.S.C. § 8701, 46, U.S.C. § 10302, 48 CFR 252.247-7027, and for penalties under 46 U.S.C. § 11107 and 46 U.S.C. § 10313, and claims for attorney's fees and costs under the General Maritime Law of the United States."[32] In addition to his prior findings, the Arbiter found that Plaintiff was aware when he signed his contract that he would be assigned to a U.S.-flagged vessel, but did not inquire about any salary/wages and other benefits under U.S. law that could potentially have been included in his contract.[33] Plaintiff also failed to seek an addendum to his POEA-approved contract making U.S. law applicable.[34] The Arbiter addressed the validity of Plaintiff's contract under Philippine law ("including all benefits and entitlements"), the appearance of the State's imprimatur on the contract, and the contract's approval by the POEA as a "tripartite agreement between the Philippine government through the Department of Labor and Employment, seafarers' group and the association of employers."[35] Arbiter Saliba also considered the equivalence of the port of "engagement" under U.S. law (as discussed in *Dziennik v. Sealift Holdings Inc.*, 2018 WL 1725623 (E.D.N.Y. 2018), which the Arbiter cited) and "point of hire" (as used in the POEA contract), which the Arbiter found as further support for application of Philippine law where Plaintiff's engagement began and ended at Manila as the point of engagement/hire.[36] In sum, the Arbiter considered *numerous* factors before deciding that Philippine law applied to Plaintiff's claims.

Finally, Arbiter Saliba considered in the alternative whether he could grant relief under U.S. law, if he found it applicable. The Arbiter concluded he would be unable to because Plaintiff had not established facts that would any entitle him to relief under U.S. law:

---

[32] *Id.*, p. 8. Initially, Arbiter Saliba found that Plaintiff had failed to prove the substance of the foreign laws he relied on under the governing rules of evidence, but that in their *defense* of those claims Sealift had introduced competent evidence of the laws. *Id.* at p. 8.
[33] *Id.*, p. 8.
[34] *Id.*, p. 8-9.
[35] *Id.*, p. 9.
[36] *Id.*, p. 9-10.

Even assuming *ex gratia argumenti* that the US laws invoked by complainant is remotely applicable, still, he miserably failed to prove by any slight of evidence that he, a Filipino seafarer is in fact considered a "gang member" under US Law. Complainant even failed to discuss the requisites and conditions entitling him to benefits under said US laws and that he has complied with all the requisites entitling him to the benefits under the US laws which he invokes.

In the light of the above discussion, all of complainant's monetary claims cannot be sustained for lack of basis and merit.[37]

Arbiter Saliba concluded his Decision as follows:

> This Arbitration Court is always mindful that justice is in every case for the deserving, to be dispensed with in the light of established facts, the applicable law and, existing jurisprudence.[5]
>
> **WHEREFORE,** premises considered, the above entitled complaint for underpayment of salary/wages and overtime pay under Philippine Law and US Law is **DISMISSED** for lack of basis and merit.
>
> All other claims are dismissed for paucity of merit.
>
> **SO ORDERED**.
>
> Quezon City, Philippines this 29th day of December 2021.
>
> **HON. JOHN-JOHN S. SALIBA**
> Labor Arbiter

## LAW AND ARGUMENT

The United Nations Convention on the Recognition and Enforcement of Arbitral Awards (the "Convention") applies when an arbitral award has been made in one signatory state and recognition or enforcement is sought in another signatory state."[38] "Both forums in this case, the

---

[37] *Id.*, p. 10.
[38] *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft MbH & CIE KG*, 783 F.3d 1010, 1015 (5th Cir. 2015) (citing Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3).

8

United States and the Philippines, are signatories to the Convention."[39] Accordingly, the Convention governs enforcement of the Decision by Arbiter Saliba.

As the Fifth Circuit has held, "[a]rbitral awards falling under the Convention are enforced under the Federal Arbitration Act, " (the "FAA").[40] Pursuant to 9 U.S.C. § 207 of the Federal Arbitration Act:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court **shall confirm** the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.[41]

"An 'emphatic federal policy' favors arbitral dispute resolution."[42] As the Supreme Court has recognized, this policy "applies with special force in the field of international commerce."[43] "The FAA permits courts to 'vacate an arbitrator's decision only in very unusual circumstances.'"[44] "A court may not review the merits of an [arbitration] award – it must accept the facts found by the arbitrator and the arbitrator's interpretation of the contract and applicable law."[45] "Similarly, a court reviewing an award under the Convention cannot refuse to enforce the award solely on the ground that the arbitrator may have made a mistake of law or fact."[46] As the party opposing enforcement of Arbiter Salibe's Decision, Plaintiff bears the burden of proving that one of the grounds specified in the Convention applies.[47] However, "[e]ven if the party opposing

---

[39] *Id.* at 1015 (citing *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 900-01 (5th Cir. 2005)).
[40] *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). See also 9 U.S.C. § 201 ("The [Convention] shall be enforced in the United States in accordance wit this chapter.").
[41] 9 U.S.C. § 207 (emphasis added). See also *Asignacion*, 783 F.3d at 1015.
[42] *Id.* (quoting *Mitsubishi*, 473 U.S. at 631).
[43] See *id.* (quoting *Mitsubishi*, 473 U.S. at 631).
[44] *Id.* (citation omitted).
[45] *Vantage Deepwater Company v. Petrobras America, Inc.*, 966 F.3d 361, 368 (5th Cir. 2020) (quoting *Manville Forest Prods. Corp. v. United Paperworks Int'l Union*, 831 F.2d 72, 74 (5th Cir. 1987)).
[46] *Asignacion*, 783 F.3d at 1015.
[47] *E.g.*, *Asignacion*, 783 F.3d at 1015-16.

enforcement managed to prove any of the specified grounds, it would mean only that 'the court may refuse enforcement,' not that it must do so."[48]

As the decision of a foreign arbiter rendered pursuant to the Convention, Arbiter Saliba's Decision is presumptively enforceable and entitled to deference and comity. To avoid enforcement of the Decision, Plaintiff would have to first establish that Arbiter Saliba violated U.S. public policy by applying Philippines law to a Philippines citizen employed by a Philippines company under a contract signed in the Philippines calling for Philippines law to govern work Plaintiff performed in the Philippines. Plaintiff would also have to overcome other grounds for denying Plaintiff's U.S. law claims relied on as alternative grounds by Arbiter Saliba, *to wit*: Plaintiff's failure to state any claims under U.S. law as Causes of Action in his NLRC Complaint; and Plaintiff's failure to prove U.S. law according to the NLRC's rules of evidence. Plaintiff would have to overcome his failure to prove entitlement to relief under U.S. law, which Arbiter Saliba found as another alternative basis for his ruling, by failing to present evidence of his entitlement to relief under the specific laws invoked. Plaintiff cannot establish the "very unusual circumstances" to overcome any of these alternate grounds Arbiter Saliba found for ruling in Sealift's favor, much less all of them. Accordingly, Plaintiff cannot avoid the "emphatic federal policy" in favor of arbitral resolution of disputes, and Sealift is entitled to recognition and enforcement of the Decision as a Judgement in Sealift's favor and release of all remaining security held in Plaintiff's favor.

## CONCLUSION

For the foregoing reasons, Sealift respectfully requests enforcement of the Decision of Arbiter Saliba, entry of Judgment in Sealift's favor, and release of all remaining security.

---

[48] *E.g.*, *Gulf Haulage Heavy Lift Co. v. Swanberg International Ltd.*, No. 18-4392, 2019 WL 13213322, at *2 (S.D.Tex. Aug. 26, 2019).

Respectfully Submitted,

*/s/ Alan R. Davis*
Alan R. Davis, T.A., #31694
Adelaida J. Ferchmin, #29859
LUGENBUHL, WHEATON, PECK, RANKIN, & HUBBARD
2775 Pan-American Life Center
601 Poydras Street
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
Email: adavis@lawla.com
       aferchmin@lawla.com

**Attorneys for Sealift Holdings, Inc., Sealift, Inc., Black Eagle Shipping, LLC, Fortune Maritime, LLC, Sealift Tankships, LLC, Sagamore Shipping, LLC, and Remington Shipping, LLC**