## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**DANIEL GONZALES LLAGAS**               **CASE NO.  2:17-CV-00472**

**VERSUS**                                              **JUDGE JAMES D. CAIN, JR.**

**SEALIFT HOLDINGS INC ET AL**       **MAGISTRATE JUDGE KAY**

### MEMORANDUM RULING

Before the Court is, Defendants', Sealift Holdings, Inc., Sealift, Inc., Black Eagle Shipping, LLC, Fortune Maritime, LLC, Sealift Tankships, LLC, Sagamore Shipping, LLC, and Remington Shipping, LLC's ("Defendants"), Motion to Recognize and Enforce Arbitration Decision and Release Security (Doc. 120), wherein Sealift moves the Court to enforce the decision of Labor Arbiter John-John S. Saliba rendered in the Republic of the Philippines on December 29, 2021. Plaintiff opposes the motion. Doc. 122.

### I.    BACKGROUND

Llagas, a citizen of the Philippines, filed this suit individually and as a putative class representative in the Fourteenth Judicial District Court, Calcasieu Parish. Llagas alleges that Defendants operate a single business enterprise comprised of various ships he identifies as the "Sealift Fleet." Doc. 1-1. Llagas alleges he was a seaman aboard the Sealift Fleet from 2015 to 2017; he brings claims for unpaid waged on behalf of himself and a putative class against the Defendants under U.S. law and general maritime law. Llagas

alleges that he had no contract with any of the Defendants, and therefore is entitled to the highest rate of pay as mandated by 46 U.S.C. § 11107.[1]

Llagas alleges that during his employment, Defendants engaged in conduct that violates various statutes of the United States, to wit: (1) that Defendants employed Llagas and other foreign nationals for a cumulative period exceeding sixty (60) days contrary to 46 U.S.C. § 8106; (2) that Defendants employed Llagas and other foreign nationals who did not possess proper Merchant Mariner's documents or were otherwise not properly certificated in violation of 46 U.S.C. § 8701; (3) that Defendants did not allow, require, or permit Llagas and other foreign nationals in their employ to sign Shipping Articles in violation of 46 U.S.C. § 10302; (4) that Defendants failed to pay proper wages to Llagas and other foreign national in their employ in violation with 46 U.S.C. § 11107 and general maritime law; and (5) that Llagas and other similarly situated foreign nationals are entitled to Delay and Penalty Wages pursuant to 46 U.S.C. § 10313. Doc. 1-1.

Even though Llagas admits in a Stipulation that he was paid all wages due to him under a contract of employment, he alleges that Defendants "failed to make payment of the full wages due to him and the class he seeks to represent." Doc. 69. However, in his Petition, Llagas asserts that he has not signed any employment contract with any of the Defendants. Llagas also asserts a cause of action for Delay and Penalty Wages pursuant to 46 U.S.C. § 10313. *Id.*

---

[1] An engagement of a seaman contrary to a law of the United States is void. A seaman so engaged may leave the service of the vessel at any time and is entitled to recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher. 46 U.S.C. § 11107.

The case was removed to this Court on March 29, 2017. Doc. 1. On May 2, 2017, Llagas filed a Motion to Transfer Venue and Enforce Forum Selection Clause (Doc. 6), and a Motion to Strike Notice of Removal Based on Admiralty Jurisdiction, and a Motion for Trial by Jury on Issue of Arbitration. Doc. 8. On that same day, Defendants filed a Motion to Stay Litigation, and an opposed Motion to Compel Arbitration. Doc. 9. On May 17, 2017, Llagas filed a Motion to Stay and Motion to Expedite. Doc. 14. The Magistrate Judge granted the Motion to Stay and the Motion to Expedite which effectively stayed all motions other than the Motion to Transfer Venue. Doc. 15.

Defendants then filed a Motion for Reconsideration (Doc. 16) regarding the Magistrate Judge's ruling to stay briefing and consideration of the Motion to Strike Notice of Removal Based on Admiralty Jurisdiction, Motion for Trial by Jury, and Motion to Stay Litigation, Motion to Compel Arbitration. Docs. 8 & 9. The Motion for Reconsideration was denied by the Magistrate Judge. By Electronic Order, Magistrate Judge Kay denied the Motion for Reconsideration pending resolution of the Motion to Transfer Venue. Doc. 19. On July 12, 2017, the Magistrate Judge denied the Motion to Transfer Venue (Doc. 22) and reset the briefing deadlines as to the previous stayed motions. Doc. 23. On July 21, 2017, Llagas filed an opposed Motion to Stay the Motion to Strike Notice of Removal (Doc. 23), Motion for Trial by Jury, Motion to Stay Litigation and Motion to Compel Arbitration. That Motion to Stay was denied. Doc. 26.

On July 24, 2017, Llagas filed an Appeal of the Magistrate Judge decision which was referred to Judge Patricia Minaldi. Doc. 27 & 28. On July 27, 2017, Llagas again filed a Motion to Stay (Doc. 29) the Motion to Strike Notice of Removal, Motion for Trial by

Jury, Motion to Stay Litigation, Motion to Compel Arbitration, and Motion to Expedite Consideration. On August 3, 201, Llagas filed a Motion to Certify Class. Doc. 36. On August 4, 2017, Magistrate Judge Kay, granted the Motion to Expedite and denied the Motion to Stay. Doc. 40. On August 11, 2017, the case was reassigned to the "Unassigned District Judge." Doc. 42.

On November 30, 2017, Chief Judge Hicks affirmed the Magistrate Judge's Ruling (Doc. 22) which denied the Motion to Transfer Venue. Doc. 53. On July 27, 2018, Magistrate Judge Kay issued a Report and Recommendation recommending that the Motion to Strike Admiralty Jurisdiction, Motion for Trial by Jury be denied; it also recommended that Defendants' Motion to Stay Litigation and Motion to Compel Arbitration be granted, and finally that Llagas's Motion to Certify Class be denied. Doc. 55. Due to a subsequent filed Stipulation by Llagas, the Magistrate Judge issued an order for Llagas to supplement his opposition to the Motion to Stay Litigation and Compel Arbitration, limited to the conclusions reached in the aforementioned Report and Recommendation. Docs. 69 & 70.

After the parties submitted further briefing, the Magistrate Judge issued a Supplemental Report and Recommendation. Doc. 76. In that Report the Magistrate Judge recommended that the Motion to Stay Litigation and the Motion to Compel Arbitration be granted. *Id.* Specifically, the Magistrate Judge found that a binding valid arbitration agreement existed under the "intertwined claims" doctrine. *Id.* On March 20, 2019, Judge Hick adopted the Report and Recommendation. Doc. 84.

Llagas filed a Motion for Reconsideration (Doc. 85) on April 3, 2019 and also filed for a petition for writ of mandamus with the Fifth Circuit on April 18, 2019. Doc. 88. On April 25, 2019, the Fifth Circuit denied the petition for writ of mandamus. Doc. 89. On June 7, 2019, Judge Hicks issued a Memorandum Order as to Llagas' Motion for Reconsideration. The Order granted the Motion to Reconsider to the extent that an Amended Judgment would be forthcoming only to clarify the Court's reasoning, but not to alter its result. Doc. 91. The Amended Judgment, issued June 12, 2019, denied the (1) Motion to Strike Admiralty Jurisdiction, (2) Motion for Trial by Jury, and (3) Motion to Certify Class, and granted the (1) Motion to Stay Litigation and (2) Compel Arbitration. Doc. 92.

On July 10, 2020, the matter was reassigned to the undersigned. On January 22, 2020, Defendants filed a Motion to Appoint Arbitrator and, Additionally or in the Alternative, Motion to Enjoin Select Foreign Proceedings (Doc. 94). On March 13, 2020, the Court issued an order granting Defendants' above motion to the extent that Llagas is ordered to initiate arbitration proceedings with the National Conciliation and Mediation Board of the Department of Labor and Employment, relative to this matter within thirty (30) days of this order, and Defendants are to comply with the rules and procedures of the NRLB.

On December 29, 2021, Arbiter Saliba with the National Labor Relations Commission in the Philippines rendered a decision dismissing, for lack of merit, Llagas's complaint for underpayment of salary/wages and overtime pay under Philippine law as

well relief sought under United States law. Doc. 120-3. As to the latter, Arbiter John-John

S. Saliba reached the determination based on the fact that Llagas

> miserably failed to prove by any slight of evidence that he, a Filipino seafarer
> is in fact considered a "gang member" under US Law. Complainant even
> failed to discuss the requisites and conditions entitling him to benefits under
> said US laws and that he has complied with all the requisites entitling him to
> the benefits under the US laws which he invokes.

Doc. 120-3. Defendants now moves the Court to enforce Arbiter Saliba's decision.

## II.  LAW

### A.  The Federal Arbitration Act ("FAA") and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention")

The FAA was enacted in 1925 in response to widespread judicial hostility to

arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The

primary substantive provision of the Act, Section 2, provides:

> A written provision in any maritime transaction or a contract evidencing a
> transaction involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract or transaction ... shall be valid,
> irrevocable, and enforceable, save upon such grounds as exist at law or in
> equity for the revocation of any contract.

*Id.* (quoting 9 U.S.C. § 2). Section 2 reflects the "fundamental principle that arbitration is

a matter of contract, and line with this principle, courts must place arbitration agreements

on an equal footing with other contracts and enforce them according to their terms." *Id.*

(collecting cases) (cleaned up). "Ensuring that private arbitration agreements are enforced

according to their terms" is the "principal purpose" of the FAA. *Id.*, at 344 (cleaned up).

The Convention sets out a structured framework for the review and enforcement of

international arbitral awards, whereunder only a court in a country with primary

jurisdiction may annul an award, leaving courts in countries of secondary jurisdiction to deciding whether to enforce the award. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004). In the United States, Chapter 2 of the FAA, the implementing legislation for the Convention, provides that secondary jurisdiction courts "must enforce an arbitration award unless it finds one of the grounds for refusal or deferral of recognition or enforcement specified in the Convention." *Id.*, at 288 (quoting 9 U.S.C. § 207 (2022)). Specifically, Article V of the Convention enumerates specific grounds from which courts of secondary jurisdiction may refuse enforcement. *Id.* (quotation omitted).

### B.  Review and Enforcement of a Foreign Arbitration Award

When a United States court has secondary jurisdiction, "[a] party to an award governed by the Convention may bring an action to enforce the award . . . ." *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1015 (5th Cir. 2015) (citing 9 U.S.C. § 207 (2022)). Thereafter, that "court shall confirm the award unless a ground to refuse enforcement or recognition specified in the Convention applies, such as when "recognition or enforcement of the award would be contrary to the public policy of that country." *Id.* (quoting Convention art. V(2)(b) (2022)). In the Fifth Circuit, "[j]udicial review of arbitration awards is severely limited. A court may not review the merits of an award—it must accept the facts found by the arbitrator and the arbitrator's interpretation of the contract and applicable law." *E.g.*, *Manville Forest Prods. Corp. v. United Paperworkers Int'l Union*, 831 F.2d 72, 74 (5th Cir. 1987). Moreover, the Supreme Court has consistently observed that "a court must hold a party to its arbitration contract just as

the court would to any other kind of contract." *E.g.*, *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022).

The "enforcement of freely negotiated choice-of-forum provisions in arbitration contracts applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (cleaned up). The United States and the Philippines are both signatories of the Convention. 9 U.S.C. § 201 (2022), *et seq.*; New York Arbitration Convention, *Contracting States*, https://www.newyorkconvention.org/countries (last visited Nov. 1. 2022). In *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, the Fifth Circuit's leading case on foreign arbitration award review and enforcement, the court highlighted the importance of the Philippine policy that "mandates that foreign employers hire Filipino workers through the Philippine Overseas Employment Administration (POEA), an arm of the Philippine government." 783 F.3d, at 1013. The POEA "requires Filipino seamen's contracts to include Standard Terms and Conditions Governing Employment, which include several provisions related to dispute resolution." *Id.* (cleaned up). "While Philippine public policy does not apply of its own force, an analysis of a foreign arbitral award is colored by concerns of international comity, even assuming that a contrary result would be forthcoming in a domestic context." *Id.*, at 1018 (collecting cases) (cleaned up). *Asignacion* shows that when balancing both countries' polices, the presence of a foreign policy is not so much the dispositive factor; rather, it is the U.S. policy interest involved that carries the weight. *See id.*

Notably, in *Asignacion* the Fifth Circuit reversed the district court because the district court held U.S. public policy as recognized under the Convention precluded enforcement of a Philippine arbitral award granted under general maritime law. *Id.*, at 1021. In reaching this conclusion, the Fifth Circuit indicated that since 1985, in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, the Supreme Court has only applied the Convention's public policy defense to statutory rights. *Id.*, at 1021. Although the *Mitsubishi Motors*'s holding does not cover review and enforcement of an arbitral award, the Supreme Court, however, in dicta, examines enforcement. 473 U.S., at 638. And because the specific question in this case— whether enforcement of a foreign arbitral award violates public policy when a Filipino seaman's statutory claims arise from a POEA contract that is carried out aboard a U.S. flagged vessel—is one of first impression, *Mitsubishi Motors* is instructive to the Court's review and decision to enforce Defendants' arbitral award.

### 1. *Raising claims under United States law during foreign arbitration*

In *Mitsubishi Motors*, the United States Supreme Court was asked to decide "whether an American court should enforce an agreement to resolve antitrust claims by arbitration when that agreement arises from an international transaction." 473 U.S., at 624. Therein, Soler Chrysler-Plymouth, Inc. ("Soler"), a Puerto Rico corporation, entered into a sales agreement with Mitsubishi Motors Corporation, a Japanese Corporation. *Id.*, at 616. Soler experienced decreasing sales volumes, which led Mitsubishi to sue Soler in the United States District Court for the District of Puerto Rico under the FAA. *Id.*, at 617–18. Mitsubishi moved the court to compel arbitration pursuant to the sales agreement,

requesting that arbitration be before the Japan Commercial Arbitration Association. *Id.*, at 618–19. Soler counterclaimed asserting causes of action under federal statutes. *Id.*, at 619–20. The sales agreement in dispute stated the following:

> All disputes, controversies or differences which may arise between [Mitsubishi] and [Soler] out of or in relation to Articles I–B through V of this Agreement or for the breach thereof, shall be finally settled by arbitration in Japan in accordance with the rules and regulations of the Japan Commercial Arbitration Association.

*Id.*, at 617. Under this sales agreement provision, the district court ordered the parties to arbitrate all of the claims in the complaint and most of the counterclaims, including antitrust claims under the Sherman Act, in Japan. *Id.*, at 620–21. Soler argued that since the arbitration clause did not mention the antitrust statutes, it could not be read to contain the statutory claims. *Id.*, at 625. In rejecting this argument, the Supreme Court indicated there was no implied "presumption against arbitration of statutory claims" in the Arbitration Act.[2] *Id.*

Ultimately, "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Id.*, at 626. And courts should apply the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Id.* (collecting cases) (internal quotations omitted). That is, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Id.* Also, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.*

---

[2] United States Arbitration Act of 1925 was the implementing statute for 9 U.S.C. §§ 1–14 contemporaneous with the claim in *Mitsubishi Motors.*

(quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983) (internal quotations omitted).

For example, in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, at issue was whether an arbitrator could resolve a claim for fraud when an arbitration contract did not manifest any intent to withhold that specific issue from arbitration. 388 U.S. 395, 396–97 (1967). The two domestic parties "agreed to a broad arbitration clause, which read in part: Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the rules then obtaining of the American Arbitration Association." [3] *Id.*, at 398. The United States Supreme Court found that the contract's reference of "[a]ny controversy or claim arising out of or relating to agreement or breach thereof" was "broad enough to encompass" a claim of fraud because no evidence was presented that the contracting parties intended to exclude fraud claims from arbitration. *Id.*, at 406: *accord Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir.1979) (holding arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue."). Though *Prima Paint* involved domestic parties to an arbitration contract, there is nothing to suggest its rationale should not be extended to foreign arbitration contracts. *Cf. Gavino v. Eurochem Italia,* No. Civ.A.01–1314, 2001 WL 1491177, at *1 (E.D. La. 2001) (holding arbitration of "any and

---

[3] United States Arbitration Act of 1925 was the implementing statute for 9 U.S.C. §§ 1–14 contemporaneous with the claim in *Prima Paint Corp*.

all disputes or controversies arising out of or by virtue of" the Filipino seaman's POEA standard employment contract included tort causes of action).

To recap, there is no implied presumption against arbitration of certain claims, parties may agree to limit the issues subject to arbitration, the intent of the parties as evidenced by the language of the contract will control, and "[t]here is no reason to depart from these guidelines where a party bound by an arbitration agreement raises claims founded on statutory rights." *Mitsubishi Motors*, 473 U.S., at 624–26. Additionally, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." *Id.*, at 628.

### 2. *"Effective Vindication" Doctrine*

In *Mitsubishi Motors*, the Supreme Court addressed the issue of whether a claim is nonarbitrable even though the party has agreed to arbitrate them. *Id.* To wit, Soler contended that one of his counterclaims under Section 4 of the Clayton Act, 15 U.S.C. § 15, which "provides treble damages to '[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws," is a remedial private cause of action that "seeks primarily to enable an injured competitor to gain compensation for that injury." *Id.*, at 635. The Supreme Court found that "[t]he importance of the private damages remedy, however, does not compel the conclusion that it may not be sought outside an American court." *Id.* Moreover, "there is no reason to assume that international arbitration will not provide an adequate mechanism, and the tribunal therefore should be bound to decide that dispute in accord with the national law giving rise to the claim." *Id.*,

at 636–37 (cleaned up). Accordingly, "so long as the prospective litigant *effectively may vindicate* its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.*, at 637 (dicta) (emphasis added). This is referred to as the effective vindication doctrine, or the prospective-waiver doctrine occasionally; the scope of which is set out in dicta in *Mitsubishi Motors*:

> We therefore have no occasion to speculate on this matter at this stage in the proceedings, when Mitsubishi seeks to enforce the agreement to arbitrate, not to enforce an award. Nor need we consider now the effect of an arbitral tribunal's failure to take cognizance of the statutory cause of action on the claimant's capacity to reinitiate suit in federal court. We merely note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.

*Id.*, at 637 n.19 (collecting cases).

Under the effective vindication doctrine, foreign tribunals have the authority to arbitrate claims under United States law but the authority to enforce any award always rests in a United States district court of competent jurisdiction to ensure the legitimate interests of United States statutes have been addressed. *Id.*, at 638. And as to the scope of the inquiry, Courts need only inquire if the foreign tribunal took cognizance of the statutory claims and actually decided them. *Id.* That is, any review of an arbitral award by a district court should be "extraordinarily narrow" and refusal of enforcement cannot be based on "the ground that the arbitrator may have made a mistake of law or fact." *Asignacion*, 783 F.3d, at 1015 (collecting cases).

In the Fifth Circuit, the effective vindication doctrine is incorporated into Article V(2)(b) of the Convention, which provides that once the arbitration decision rendered,

confirmation of the foreign arbitral award may be refused if the recognition and enforcement of the award would be contrary to public policy. *Id.*, at 1021. In other words, if the legitimate interests of United States statutes have not been addressed. *Mitsubishi Motors*, 473 U.S., at 638.

### III.   <u>ANALYSIS</u>

Defendants move the court to recognize and enforce Arbiter Saliba's arbitration decision and release security. Doc. 120. When a motion to enforce an arbitral award is before a court, "[t]he party opposing enforcement of the award on one of the grounds specified in the Convention has the burden of proof." *Asignacion*, 783 F.3d, at 1015–16. Thus, Llagas bears the burden of proof to show that enforcing the decision would violate public policy. *Id*. After the Court's inquiry, Llagas has failed to meet his burden. The Court concludes that under the POEA, Llagas contractually agreed to resolve all disputes, including United States statutory claims, in arbitration in the Philippines; he was not denied a forum and opportunity to raise his claims, of which Arbiter Saliba heard and decided on the merits; and it is not contrary to public policy for this Court to recognize and enforce Defendants' arbitral award. *See, e.g.*, *Mitsubishi Motors*, 473 U.S., at 638. The Court's reasoning is set forth below.

#### A.  Whether Defendants are entitled to enforcement of the arbitral award

Here, Defendants argue that Arbiter Saliba's Decision is presumptively enforceable and entitled to deference and comity. Doc. 120-1. Moreover, Defendants assert that Lagas's failure to state any claims under U.S. law as Causes of Action in his NLRC Complaint, and his failure to prove U.S. law according to the NLRC's rules of evidence are likely fatal. *Id.*

Therefore, Llagas's would have to overcome this failure to prove entitlement to relief under U.S. law when Arbiter Saliba found that he failed to present evidence of his entitlement to relief under the specific laws invoked. *Id.*

On the other hand, Llagas, the plaintiff and nonmover, bears the burden to show why Defendants should not be entitled to enforcement. *See Asignacion*, 783 F.3d, at 1015–16. Llagas claims that Defendants, U.S. corporate entities and registered owners of a U.S. flagged vessel, engaged Filipino employees under POEA contracts in violation of 46 U.S.C. §§ 8106, 8107, 10302, 10313, and 11107. Doc. 122-1. At arbitration in the Philippines, Llagas asserted these claims demanding sums of money as a result of the statutory violations under United States law, in addition to claims for underpayment of salary/wages and overtime pay under Philippine law. *Id.* As to claims for underpayment of salaries/wages and overtime pay, the Arbitration Court denied Llagas's claim for the following: (1) he failed to submit evidence of paid or unpaid amounts arising out of his POEA-approved contract dated September 26, 2016; and (2) that Defendants had proven Llagas received his remuneration due under the POEA-approved contract. Doc. 120-3. For his claims under U.S. statutes, the Arbitration Court ruled that Llagas failed to prove that he was a "gang member"[4] under United States law, and that his arbitration complaint was void of any claims entitling him to benefits under United States laws. Doc. 120-3.

---

[4] A "riding gang member" means an individual who—(A) has not been issued a merchant mariner document under chapter 73; (B) does not perform—(i) watchstanding, automated engine room duty watch, or personnel safety functions; or (ii) cargo handling functions, including any activity relating to the loading or unloading of cargo, the operation of cargo-related equipment (whether or not integral to the vessel), and the handling of mooring lines on the dock when the vessel is made fast or let go; (C) does not serve as part of the crew complement required under section 8101; (D) is not a member of the steward's department; and (E) is not a citizen or temporary or permanent resident of a country designated by the United States as a sponsor of terrorism or any other country that the Secretary, in

Llagas now asks the Court to deny enforcement of the arbitration decision and allow him to pursue claims against Defendants for violations of 46 U.S.C. §§ 8106, 8701, 10302, and seeks the remedies allowed by 46 U.S.C. §§ 11107, and 10313 in this Court. Doc. 122-1. Furthermore, Llagas claims that by enforcing the arbitral award, it would violate U.S. public policy, and the Court should refuse to enforce it pursuant to the Article V(2)(b) of the Convention. *Id.* Llagas launches a bevy of reasons why the arbitrator's decision violates public policy; however, the gravamen of his argument is that "it operates as a complete "prospective waiver" of [his] statutory rights under U.S. law." *Id.* Llagas claim is essentially the effective vindication doctrine from *Mitsubishi Motors*.

To support his argument under the effective vindication doctrine, Llagas asserts that *Asignacion*, 783 F.3d, at 1021, and *Aggarao v. MOL Ship Mgmt. Co.*, No. CIV. CCB-09-3106, 2014 WL 3894079, at *14 (D. Md. 2014), control. Specifically, he claims that under his POEA contract, the "choice of forum and choice of law clauses that result in a waiver of statutory rights would invoke the prospective waiver doctrine and violate the public policy of the U.S." *Id.* Llagas, however, contends that unlike in *Asignacion* where the Fifth Circuit found no violation of public policy because the claims were lodged under general maritime law and the vessel was not U.S. flagged, the claims here are statutorily grounded, and the vessel is U.S. flagged. To further support his argument that this Court should deny Defendants' motion to enforce, Llagas maintains that *Aggarao* warrants the Court's attention because therein, as in this case, the enforcement the arbitral award would leave

---

consultation with the Secretary of State and the heads of other appropriate United States agencies, determines to be a security threat to the United States. 46 U.S.C. § 2101(36) (2022).

him without a remedy. 2014 WL 3894079, at *14 (Maryland federal district court refused to enforce an arbitral award because the Philippine arbitrator provided no remedy at all under U.S. general maritime law against the vessel owners.).

### 1. *Whether Llagas agreed to arbitrate the dispute*

This Court previously found that the "intertwined claims" doctrine applies to Llagas's claims against Defendants, a nonsignatories to Llagas's POEA contract, and therefore Defendants may rely on the POEA contract's arbitration clauses. Doc. 76 & 84. To the narrower issue of whether issues arising under violation of 46 U.S.C. §§ 8106, 8107, 10302, 10313, and 11107 were intended to be resolved in arbitration, the Court must look at the POEA contract provision to make that determination. Section 29 of Llagas's POEA contract states:

> In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of voluntary arbitrators. If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission ("NRLC"), pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995, as amended, or to the original and exclusive jurisdiction of the voluntary arbitrators or panel of arbitrators. If there is no provision as to the voluntary arbitrators to be appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board ("NCMB") of the Department of Labor and Employment. The Philippine Overseas Employment Administration (POEA) shall exercise original and exclusive jurisdiction to hear and decide disciplinary action on cases, which are administrative in character, involving or arising out of violations of recruitment laws, rules and regulations involving employers, principals, contracting partners and Filipino seafarers.

Doc. 9-1. In surveying the text of Section 29, the phrase, "In cases of claims and disputes arising from this employment," is closely analogous to the phrase, "Any controversy or claim arising out of or relating to this Agreement," of which language the Supreme Court has held sufficiently broad to encompass a claim of fraud. Doc. 9-1; *Cf. Prima Paint*, 388 U.S., at 406. The same rationale is appropriate here. Accordingly, the Court finds that Section 29 of Llagas's POEA contract is sufficiently broad to encompass his claims under 46 U.S.C. §§ 8106, 8107, 10302, 10313, and 11107. *Cf. id.* Moreover, the Court will not find *sub silentio* a special exclusion ensconced in the phrase "claims and disputes arising from this employment." Doc. 9-1.

Of course, an alert reader here will make the distinction that claims of fraud and claims arising from statutes are different; nevertheless, the Supreme Court has stated "[t]here is no reason to depart from these guidelines where a party bound by an arbitration agreement raises claims founded on statutory rights." *Mitsubishi Motors*, 473 U.S., at 626. Especially since no implied presumption against arbitration of Llagas's statutory claims exists. *See id.*, at 625. In sum, the Court finds that Section 29 of Llagas's POEA contract does not manifest any intent to withhold issues arising under violation of 46 U.S.C. §§ 8106, 8107, 10302, 10313, and 11107 from arbitration. *See Prima Paint Corp.*, 388 U.S., at 396–97.

### 2. *Whether a Llagas's was able to effectively vindicate his claims*

Llagas argues that *Aggarao* is on all fours because he, likewise, was provided no remedy at all against Defendants. 2014 WL 3894079, at *14. However, *Aggarao* is distinguishable. Mr. Aggarao's was denied the opportunity to pursue the remedies to which

he was entitled as a seaman and, as a result, was deprived of an adequate remedy. *Aggarao*, 2014 WL 3894079, at \*12. Here, that is not the case. It is one thing to be categorically denied an opportunity to present a claim, while it is another to present a claim but receive an unfavorable decision. The latter, not the former, has occurred in Llagas's arbitration. Doc. 120-3. Specifically, Llagas put forth no evidence to satisfy Arbiter Saliba that he was entitled to damages under 46 U.S.C. §§ 8106, 8107, 10302, 10313, and 11107. Therefore, Llagas cannot now claim the foreign tribunal provided no relief on his statutory claims; in reality, he merely received an inauspicious decision. The Court finds that Arbiter Saliba took cognizance of the statutory claims and actually decided them. *Cf. Mitsubishi Motors*, 473 U.S., at 638. Consequently, the Court is not convinced that Llagas was prevented from effectively vindicating his rights by being compelled to arbitrate in a Philippine forum. *See Id.*, at 636–37 (observing that Japanese arbitration provides an adequate mechanism to decide a dispute in accord with U.S. antitrust statutes giving rise to the claim).

As to Llagas's argument that the law of the flag precludes this Court from enforcing the foreign arbitral award, the Court finds it unpersuasive. In *Cruz v. Chesapeake, Inc.*, eleven ships transitorily flew the American flag, but the goods and seaman onboard were entirely foreign. 932 F.2d 218, 231–32 (3d Cir. 1991). As with Llagas, the "contract of employment, negotiated by a Philippine labor union and approved by POEA, was a carefully and validly drawn document granting the POEA exclusive jurisdiction over any and all disputes arising out of the contract." *Id.* The Third Circuit held that the Filipino seamen working under POEA contracts were not subject to Fair Labor Standards Act's minimum wage provisions by dint of the vessels being reflagged with the U.S. flag. *Id.*, at

213–32. Importantly, the circuit court noted that the law of the flag "is not an inflexible rule."[5] *Id.*, at 228, 234 n.2 (Cowen, J., concurring). Assuming, *arguendo*, that Llagas had prevailed at his arbitration on the U.S. statutory claims, he would likely come before this Court and argue that the law of the flag compels enforcement of his arbitral award. The Court finds that the law of the flag is not dispositive herein and, thus, does not weigh against enforcement of Defendants' arbitral award.

Finally, "[a]rbitration of all claims by Filipino overseas seafarers is an integral part of the POEA's mandate to promote and monitor the overseas employment of Filipinos and safeguard their interest." *Balen v. Holland America Line, Inc.*, 583 F.3d 647, 651 (9th Cir. 2009). Accordingly, "[t]he importance of the POEA Standard Terms to the Philippine economy also weighs in favor of enforcement" of Defendants' arbitral award. *See Asignacion*, 783 F.3d, at 1018.

In light of the Court's "extraordinary narrow" review of Labor Arbiter Saliba's decision, Defendants' arbitral award does not violate U.S. public policy and is therefore enforceable. *See id.*, at 1015.

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Recognize and Enforce Arbitration Decision and Release Security by Sealift Holdings, Inc., Sealift, Inc., Black Eagle Shipping, LLC, Fortune Maritime, LLC, Sealift Tankships, LLC, Sagamore Shipping,

---

[5] Plaintiffs argue that the law of the flag dictates our choice of law. In other words, plaintiffs believe that because the ships on which they worked were American ships, American law must apply to their claims. This contention is totally without merit. If the Supreme Court had wished the ship's flag to be the only consideration in choosing the applicable law, it would not have required analysis of seven other factors. While the country of the flag may be an important consideration, it is not the only one. *Cruz*, 932 F.2d, at 234 n.2.

LLC, and Remington Shipping, LLC, is **GRANTED**. Therefore, the Decision of Labor Arbiter John-John S. Saliba in the matter Daniel G. Llagas v. Magsaysay Maritime Corp., NLRC NRC OFW Case No. (M) 05-01092-21 is **RECOGNIZED** and **ENFORCED**.

**THUS DONE AND SIGNED** in Chambers on the 8th day of November, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**